**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| E.F., by her parents and next friends Kelli and Michael Femrite, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:26-cv-09816 |
| v. | ) | Judge Jorge L. Alonso |
| Manhattan School District 114, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kelli Femrite and Michael Femrite, as parents and next friends of E.F., brought suit against Defendant Manhattan School District 114, alleging discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act, 20 U.S.C. § 794. Plaintiffs now move to enforce a limited interim agreement and renew their motion for a preliminary injunction. For the reasons discussed below, Plaintiffs' motions are denied.

**Background**

On August 14, 2025, Plaintiffs brought suit against Defendant under Title II of the ADA and Section 504 of the Rehabilitation Act. *See* ECF 1. Plaintiffs alleged that Defendant has discriminated against E.F. on the basis of her disability by attempting to exclude E.F. from her home school, Manhattan Intermediate, including by attempting to place E.F. at a therapeutic day school without an operative individualized education plan ("IEP"). *Id.* The parties are currently engaged in parallel due process proceedings before the Illinois State Board of Education and under the Individuals with Disabilities Education Act ("IDEA") concerning E.F.'s placement. *Id.*

On August 16, 2025, Plaintiffs moved for a temporary restraining order and/or preliminary injunction requiring Defendant to allow E.F. to attend the fifth-grade general education program at Manhattan Intermediate, subject to the accommodations provided in her December 2024 504 Plan and revisions thereto. *See* ECF 4. On August 18, 2025, the Court granted Plaintiffs' motion for a TRO in view of the fact that, absent the TRO, E.F. would be without any school placement. *See* ECF 8. Pursuant to the TRO, Defendant was required to, among other things: "implement all accommodations provided in E.F.'s [December 2024] 504 Plan . . . and enroll her as a fifth-grade general education student at Manhattan Intermediate School"; and "hold a meeting with Plaintiffs by no later than September 3, 2026 to discuss revisions to E.F.'s 504 Plan that may be required to ensure equal and nondiscriminatory access to her education, pursuant to updated evaluation data and medical provider recommendations from spring and summer 2026, teacher observations and data collected thus far in the school year." ECF 8 at 1-2. The TRO expired on September 1, 2026. *See id*.

On August 25, 2026, the parties submitted a joint status report indicating their entry into a limited interim agreement as to E.F.'s placement pending the resolution of the state due process proceedings (the "Limited Interim Agreement" or "LIA"). *See* ECF 14. Pursuant to that agreement, Defendant agreed to allow E.F. to attend Manhattan Intermediate pending resolution of the due process proceedings; implement her December 2024 504 Plan; and meet in September to revise the December 2024 504 Plan to reflect her current educational needs. *Id*. Specifically, the Limited Interim Agreement provides that "the Parties have reached the following limited interim agreement that E.F. will be placed at Manhattan Intermediate School under a Section 504 Plan pending resolution of the due-process proceedings. . . . This limited interim agreement is intended to preserve E.F.'s access to educational programming while the due-process proceedings remain

pending." *Id.* at 1-2. The LIA contains three terms pertinent here: (1) Defendant "agrees to implement E.F.'s December 2024 504 Plan as her stay-put placement until the Parties' already-scheduled meeting on September 1, 2026"; (2) the parties would "meet on September 1, 2026 to discuss potential revisions to E.F.'s 504 Plan"; and (3) "[f]ollowing the meeting to discuss revisions to E.F.'s 504 Plan on September 1, 2026, [Defendant] will implement E.F.'s September 2026 504 Plan as her stay-put placement until the due process proceedings are resolved." *Id.* at 1. Since their entry into the LIA, the parties have held meetings to discuss revisions to E.F.'s 504 Plan on September 1, 2026 and October 6, 2026. *See* ECF 28 at 2. E.F.'s most recent 504 Plan is dated October 6, 2026 (the "October 2026 504 Plan"). *See* ECF 27-4.

Plaintiffs now move under Federal Rule of Civil Procedure 7(b) to enforce the Limited Interim Agreement, and renew their motion for a preliminary injunction under Federal Rule of Civil Procedure 65.

## Discussion

### A. Motion to Enforce the Limited Interim Agreement

Plaintiffs argue that Defendant has violated the LIA by refusing to implement consensus accommodations; refusing to memorialize orally-agreed to revisions to accommodations in writing; refusing to agree to certain accommodations; and denying E.F. access to fifth-grade general education curriculum. *See* ECF 27. Defendant argues that Plaintiffs read the LIA too broadly, and argues that it has complied with the LIA in full by implementing the December 2024 504 Plan; meeting with Plaintiffs on September 1, 2026 to discuss revisions; and implementing the October 2026 504 Plan. *See* ECF 28.

**1. Scope of the Limited Interim Agreement**

Before reaching the merits of the parties' arguments, the Court will address the scope of the LIA.[1] The LIA is narrow: it compels the parties only to implement the December 2024 504 Plan and, to the extent the parties in fact agreed on revisions at the September 1, 2026 meeting, the October 2026 504 Plan.[2] The LIA does not mandate that revisions *must* be made, at all, to the December 2024 504 Plan: the parties agreed only to meet to "discuss *potential* revisions to E.F.'s 504 Plan" in light of updated data and recommendations. ECF 14 at 1 (emphasis added). Furthermore, the LIA does not require Defendant to make subsequent revisions to the October 2026 504 Plan, and it does not provide that any revisions must meet or comply with a specific standard. This is not to say that Defendant need not comply with state or federal law, but rather to say that the LIA does not provide Plaintiffs with a right to compel Defendants to make "reasonable" accommodations, separate and apart from E.F.'s rights under such state and federal law—and the parties dispute whether Plaintiffs may assert her rights in this forum at all. Plaintiffs' reservation of rights in the LIA does not cure this issue. *See* ECF 14 at 1 (providing that Plaintiffs "reserve the right to seek further relief from this Court should they believe that the September 2026 504 Plan does not comply with the requirements of the statute").

Thus, to the extent Plaintiffs seek to compel Defendant to agree to implement certain accommodations, their request exceeds the scope of the LIA. In particular, Plaintiffs argue that Defendant is violating the LIA by refusing to now agree to accommodations the parties agreed

---

[1] Plaintiffs make repeated reference to the TRO, *see, e.g.*, ECF 27 at 4 (requesting that the Court "hold Defendants in contempt of this Court's orders"); but the TRO expired on September 1, 2026. And, even if it had not, Plaintiffs construe the TRO more broadly than its terms permit. But for its requirements that a school counselor monitor implementation of E.F.'s 504 Plan and provide written summary reports, the TRO is no greater in scope than the LIA, and is, in fact, as discussed below, more limited than the LIA. *Cf.* ECF 8 *with* ECF 14.

[2] Though the LIA refers to the "September 2026 504 Plan," it appears that no 504 plan was finalized in September, and that the October 2026 504 Plan is instead the result of the September 1, 2026 meeting. *See* ECF 27 at 5 (discussing parties' attempts to finalize a 504 plan continuing from September into October). As such, the October 2026 504 Plan is both the operative plan and the plan referenced in the LIA.

were necessary in April 2026—four months before the parties entered into the LIA. *See* ECF 27 at 9-12. Plaintiffs do not argue that these accommodations were incorporated into the December 2024 504 Plan by the LIA; and thus this is manifestly outside the scope of the LIA. Likewise, Plaintiffs argue that E.F. has been denied access to the general fifth-grade curriculum because she has been denied access to iPad-based work her peers are completing. ECF 27 at 2. At bottom, Plaintiffs frame their motion as one to enforce the LIA, but their arguments are premised on E.F.'s substantive rights under federal law rather than those afforded to her under the LIA. *See, e.g.*, ECF 27 at 10 (arguing that Defendant's refusal to implement 1:1 paraprofessional support "is a violation of E.F.'s right to be in the least restrictive environment with supports that are 'tailored to enable progress in light of [her] individual circumstances'") (quoting *N.T. v. Galesburg Cnty. Unit Sch. Dist. No. 205*, 174 F.4th 1044, 1060 (7th Cir. 2026)); *id.* at 12 (arguing that Defendant's refusal to provide staff training on pathological demand avoidance ("PDA") violates Section 504); ECF 30 at 4 (arguing that "E.F. is entitled to paraprofessional support" because "Title II requires reasonable modifications"). While, as discussed below, certain aspects of the LIA overlap with state and federal law, the LIA is not coextensive with E.F.'s rights under the ADA and Rehabilitation Act, and so cannot be used as a back door to relief otherwise only available through exercise of those rights.

The scope of the LIA must be further circumscribed by the definition of the term "implement." The LIA compels Defendant to "implement E.F.'s September 2026 504 Plan as her stay-put placement until the due process proceedings are resolved." ECF 14 at 1. Though the LIA does not define "implement," it does qualify that obligation with the phrase "as her stay-put placement," which this Court interprets to mean that the parties did not intend to impose an obligation on Defendant greater than its obligations to "implement" a Section 504 plan under the

Rehabilitation Act or the ADA. ECF 14 at 1. In other words, Defendant's obligation to "implement" E.F.'s 504 Plan under the LIA is coterminous with its obligation to "implement" E.F.'s 504 Plan under the Rehabilitation Act and related statutes.

The question then is: What does it mean to implement a Section 504 plan under federal law? This question is perhaps more accurately phrased as two composite questions: (1) How should a Section 504 plan be interpreted?; and (2) What constitutes a violation of a Section 504 plan? The Seventh Circuit in *CTL v. Ashland School Dist.*, 743 F.3d 524 (7th Cir. 2014) noted the dearth of authority on Section 504 plans, *id*. at 529 ("[W]e have found very few cases involving only 504 plans."); and, in lieu of on-point authority, looked to decisions by "circuit courts addressing failure-to-implement claims in cases in which IEPs were *required*," *id*. (emphasis in original), including the Ninth Circuit's decision in *Van Duyn v. Baker School Dist. 5J*, 502 F.3d 811 (9th Cir. 2007). There, the Ninth Circuit held that an IEP could not be interpreted under state contract law because "the IEP is entirely a federal statutory creation"—logic which would seem to apply to a Section 504 plan in equal force. *Id*. at 820. And, unlike contract liability, minor deviations from a Section 504 plan do not automatically violate the statute; rather, "they must be significant enough to *effectively* deny a disabled child the benefit of a public education." *CTL*, 743 F.3d at 529-30 (citing *Van Duyn*, 502 F.3d at 821-22 ("The language [of the IDEA] counsels against making minor implementation failures actionable given that 'special education and related services' need only be provided 'in conformity with' the IEP. There is no statutory requirement of perfect adherence to the IEP . . .")). That is to say, E.F.'s Section 504 Plan may not be treated under the law as a contract requiring strict interpretation and perfect adherence.

**2. Defendant's Compliance with the Limited Interim Agreement**

Having established the scope of the Limited Interim Agreement, the Court next moves to the issue of Defendant's compliance with the LIA. Plaintiffs argue that Defendant has violated the LIA by (a) refusing to memorialize in writing revisions to accommodations that were orally agreed upon at the September 1, 2026 meeting; and (b) failing to implement E.F.'s October 2026 504 Plan. As to the former, Plaintiffs do not specify what revisions Defendant agreed to orally, but refused to memorialize in writing. *See* ECF 27 at 2, 5. This is problematic as Defendant states that it "is unaware of any orally agreed upon accommodations and is unaware of agreed upon accommodations that are in the 504 Plan notes but not in the 504 [P]lan," ECF 28 at 2, and because Plaintiffs do not respond to this argument on reply. As to the latter, Plaintiffs argue that Defendant has failed to implement the October 2026 504 Plan by failing to provide: (1) weekly data reports; (2) arrival support, and (3) "Check-In/Check-Out." *See* ECF 27 at 6-7; ECF 30 at 8-11. Plaintiffs do not address whether any of these alleged failures to implement E.F.'s 504 Plan reach the level of a material deviation from the Plan; and, to their detriment, purport to provide the Court only with "[i]llustrative examples of the[] violations" for which they seek relief. ECF 30 at 8. Taking each in turn below, the Court cannot find that any of the deviations Plaintiffs have alleged rise to the level of material violations.

First, the Plan provides that Defendant's "[t]eam will develop a checklist to share with parents weekly" to "track work completion, breaks, testing location used." ECF 27-4 at 4. Defendant argues that while "[t]he school developed a weekly checklist . . . E.F. has not attended a full week of school since the September 1, 2026 meeting for the team to collect this data." ECF 28 at 5. Plaintiffs point out that the Plan contains no full-week-attendance prerequisite, and, while the TRO was in effect, Defendant submitted summaries for weeks where E.F. did not attend each

day of school. *See* ECF 8 at 2 ("Defendant shall provide written summary reports . . . each Friday by 4:00 pm during the pendency of the TRO."). The Court agrees that the Plan does not require a full week of attendance to trigger Defendant's obligation to submit a checklist to Plaintiffs; but Plaintiffs have not demonstrated that Defendant's failure to submit the checklists have "*effectively* den[ied] [E.F.] the benefit of a public education." *CTL*, 743 F.3d at 529-30.

Second, the Plan provides that "[i]f [E.F.] does not want to come to school[,] SW/Counselor can help encourage her to come into the building." ECF 27-4 at 4. Plaintiffs argue that there have been numerous days when no trusted adult provided arrival support. *See* ECF 30 at 9-10. Defendant argues that the Plan "does not say that the social worker or counselor *will* greet her at the door and escort her every day of school." ECF 28 at 4 (emphasis added). Indeed, it does not; but the October 2026 504 Plan is not a contract, and Defendant does not offer a compelling basis to construe this element so narrowly. However, Plaintiffs have not provided a sufficient factual basis upon which this Court may find that Defendant's failure to implement this element of the Plan rose to a material, rather than *de minimis*, deviation. Plaintiffs further identify a specific instance where the principal of Manhattan Intermediate interfered with arrival support, *see* ECF 27 at 8; but Defendant argues that Plaintiffs are misrepresenting the interaction, and that extenuating circumstances—namely, E.F.'s late arrival at school in the midst of first responders entering the building for an intruder drill—excuses any deviation, *see* ECF 30 at 4. The Court cannot find, based on the facts before it, that the principal's actions were unreasonable.

Third, the Plan provides that Defendant will "[c]reate a check in/check out for arrival and end of the day with student" to be "done in library with library staff." ECF 27-4 at 4. Plaintiff argues that Defendant "has not facilitated a connection with library staff," ECF 27 at 7, and that Defendant has created "its own unvalidated system whereby E.F. is asked to identify with a

particular cat" without any of the "identifiable core components and implementation procedures," ECF 30 at 10. Defendant argues that "E.F. has not agreed to go the library to complete this process," and does not address Plaintiffs' argument concerning the form of the "Check In/Check Out" because Plaintiffs only raise this issue on reply. ECF 28 at 5. As such, the Court cannot rule on this issue in Plaintiffs' favor. *See United States v. Feinberg*, 89 F.3d 333, 341 (7th Cir. 1996) (A reply brief "is not the appropriate vehicle for presenting new arguments or legal theories to the court."); *Johnson v. Root*, 812 F. Supp. 2d 914, 924 (N.D. Ill. 2011) ("A party cannot make conclusory and underdeveloped arguments in its opening brief and then deign to support and develop those arguments in his or her reply brief.").

**3. Plaintiffs' Entitlement to Relief**

Even if Plaintiffs had identified material violations, it is not evident that Plaintiffs would be entitled to the relief they seek, for several reasons. Plaintiffs request that the Court "[o]rder [Defendant] to reimburse Plaintiffs' for attorneys' fees and costs related to their ongoing efforts to enforce the Limited Interim Agreement" and "[o]rder [Defendant] to pay monetary sanctions to Plaintiffs in an amount proportionate to its course of misconduct and sufficient to deter future misconduct and willful noncompliance." ECF 27 at 15. While this satisfies Plaintiffs' obligation under Federal Rule of Civil Procedure 7(b) to "state the relief sought," Plaintiffs do not "state with particularity th[eir] grounds for seeking [such an] order." Namely, Plaintiffs make no arguments and provide no authority indicating that the violations alleged here warrant an award of fees or that they are entitled to monetary sanctions. The LIA does not provide for any such remedy, and a review of the case law indicates that these remedies are, more likely than not, unavailable to them under federal law. *See Linda T. v. Rice Lake Area School Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) ("The Supreme Court has said that 'the most critical factor' in determining the reasonableness of

a fee award 'is the degree of success obtained.' . . . The reasonable fee award for a prevailing plaintiff who obtains only a 'Pyrrhic victory' is zero.") (citations omitted); *Barnes v. Gorman*, 536 U.S. 181, 184-88 (2002) (punitive damages may not be awarded in private suits brought under the ADA or the Rehabilitation Act).

Separately, it is not evident that Plaintiffs may bring these disputes to this Court in the first instance. In short, Plaintiffs have not shown that their enforcement of the LIA in this manner is not, effectively, a denial of a free appropriate public education ("FAPE") claim by another name. The parties did indeed agree that "[Defendant] will implement E.F.'s September 2026 504 Plan as her stay-put placement until the due process proceedings are resolved." ECF 14 at 1. In this regard, the LIA contemplates court intervention far more extensive than what was provided for by the TRO—which functioned simply to ensure that E.F. would have a school to go to *at all*. Relying on this provision, Plaintiffs now assert that "this Court is fully empowered to hear and rule on Plaintiffs' claims that E.F.'s rights under Section 504 and the ADA are being violated, and to enforce the limited interim agreement . . . Plaintiffs simply request that this Court enforce the existing interim arrangement and remedy disability-based barriers to entry, participation, and access to materials." ECF 30 at 2-3. But it is not clear that this Court is in fact "fully empowered to hear and rule on Plaintiffs' claims that E.F.'s rights under Section 504 and the ADA are being violated" or to "remedy disability-based barriers to entry, participation, and access to materials." *Id*. That is to say, Plaintiffs have not convincingly argued that they are entitled, under federal law, to request relief on this basis from this Court; that their request for enforcement of the LIA concerns only "simple discrimination" and not adequacy of education. *See Fry v. Napoleon Community Schools*, 580 U.S. 154, 158, 169-174 (2017).

While the same conduct may violate all three statutes, the Supreme Court has held that, where a complaint seeks relief for denial of a FAPE, it implicates the exhaustion requirement of the IDEA. *Id*. at 171. The IDEA requires that, "before the filing of a civil action under such laws seeking relief that is also available under this subchapter [including the ADA and/or Rehabilitation Act], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l). The Supreme Court clarified in *Fry* that the IDEA's exhaustion requirement applies where "a suit . . . seek[s] relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Fry*, 580 U.S. at 165. In determining whether a plaintiff seeks relief for the denial of a FAPE, what matters is the gravamen of the plaintiff's complaint, setting aside any attempts at artful pleading. *See id*. at 169. The Supreme Court identified two hypothetical questions that provide "clues" as to the gravamen of a complaint: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school?" and (2) "could an *adult* at the school . . . have pressed essentially the same grievance?" *Id.* at 171 (emphasis in original). If the answer to both questions is no, the complaint "probably does concern a FAPE." *Id.*

The Supreme Court has since clarified that Section 1415(l) does not require that "a plaintiff exhaust subsections (f) and (g) before he may pursue a suit under another federal law if that suit seeks relief for the same *underlying harm* [the] IDEA exists to address"; rather, the IDEA's administrative exhaustion requirement applies *only* to suits that 'see[k] relief . . . also available under' [the] IDEA." *Luna Perez v. Sturgis Public Schools*, 598 U.S. 142, 147-48 (2023) (emphasis in original). As such, "that condition is simply not met in situations . . . where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide." *Id*. at 148-49. Here, Plaintiffs do not seek compensatory damages, but attorneys'

fees, a form of relief which *is* available under the IDEA, *see Linda T.*, 417 F.3d at 707; and "monetary sanctions," which do not appear to be available to them under the ADA, Rehabilitation Act, or IDEA.

Plaintiffs argue that "this Court has already heard and disposed of Defendant's arguments that it does not have jurisdiction over the issues in this case" at the TRO hearing because "the Court granted Plaintiffs' relief over that [IDEA exhaustion] objection"; but they are mistaken. ECF 29 at 2. Administrative exhaustion under the IDEA is a claims-processing rule, not a jurisdictional issue which would compel resolution before issuance of a TRO. *See Mosely v. Board of Educ. of City of Chicago*, 434 F.3d 527, 533 (7th Cir. 2006). And a court weighs the TRO factors in what the Seventh Circuit has called a "sliding scale" approach. That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotation marks omitted). Thus, the Court's grant of Plaintiffs' motion for a TRO cannot be construed as a definitive ruling on exhaustion in their favor, especially in the face of the emergent and serious harm facing E.F. at the time of the Court's ruling on the TRO. And in the instant motion, Plaintiffs do not address *Fry* or its progeny.[3]

* * *

For these reasons, Plaintiff's motion to enforce the Limited Interim Agreement is denied.

**B. Motion for Preliminary Injunction**

Plaintiffs also renew their motion for a preliminary injunction. Plaintiffs first filed their preliminary injunction motion simultaneously with their pleadings, and "ask[ed] the Court *only* to determine that E.F. is qualified to attend Manhattan Intermediate School within the meaning of

---

[3] Defendant requests that the Court refer this matter to the IDEA hearing officer, *see* ECF 7-8, but provides no procedural or jurisdictional basis for this Court to make any such referral.

Section 504." ECF 4 at 26 (emphasis in original). Plaintiffs stated that their requested relief "does not ask the Court to micromanage E.F.'s educational programming or accommodations . . . or adjudicate any questions under . . . the IDEA. It requires only that the status quo be enforced . . ." ECF 4 at 30. Plaintiffs now seek different relief—namely, "a preliminary injunction requiring the District to pay for all expenses relating to an educationally appropriate homeschool program for E.F. during the pendency of the due process proceeding . . ." ECF 27 at 14. And Plaintiffs have since filed an amended complaint which, among other things, states new claims and names new defendants. *See* ECF 29.

No briefing submitted by Plaintiffs addresses the legal standard for a preliminary injunction as it applies to the current landscape of this case. *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002), as amended (Oct. 18, 2002) (plaintiff must show: (1) it has a reasonable likelihood of success on the merits; (2) that it has no adequate remedy at law; and (3) that it will suffer irreparable harm without an injunction). This is underscored by the fact that no motion for preliminary injunction has been fully briefed by the parties: for example, Defendant's brief in opposition to the instant motion addresses only the Limited Interim Agreement, and does not reference several arguments pertinent to Plaintiffs' likelihood of success on the merits raised in its now-mooted motion to dismiss. *See* ECF 24-2. For these reasons, the Court denies Plaintiffs' renewed motion for preliminary injunction without prejudice.[4]

[4] Though the Court does not reach the merits of Plaintiffs' motion for preliminary injunction, it notes that the relief Plaintiffs now request—including that the Court "[m]onitor the District's compliance with Court orders on an ongoing basis" and order payment of unspecified costs—raises concerns of overbreadth and vagueness. *See EEOC v. AutoZone, Inc.*, 707 F.3d 824, 841-42 (7th Cir. 2013) (noting that "overbreadth and vagueness concerns are rooted in basic principles of due process") (citing Fed. R. Civ. P. 65(d) ("Every order granting an injunction . . . must . . . describe in reasonable detail—and not by referring to the complaint or other document—the acts or acts restrained or required.")).

**Conclusion**

Plaintiffs' motions are denied without prejudice. The parties shall file a joint status report by December 1, 2026, updating the Court on the status of this case, including whether Plaintiffs intend to move for a preliminary injunction.

**SO ORDERED.**

**ENTERED: November 18, 2026**



**HON. JORGE L. ALONSO**
**United States District Judge**